**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| TAMI B., | : | |
| Plaintiff, | : | CIVIL CASE NO. |
| | : | 3:21-CV-01460 (JCH) |
| v. | : | |
| | : | |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | March 7, 2023 |
| Defendant. | : | |

**RULING ON PLAINTIFF'S MOTION TO REVERSE THE DECISION OF THE COMMISSIONER (DOC. NO. 14) AND DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER (DOC. NO. 16)**

## I.    INTRODUCTION

Plaintiff Tami B. ("Tami") brings this action under section 405(g) of title 42 of the United States Code, appealing the Final Decision of the Commissioner of the Social Security Administration ("the Commissioner") denying her application for Disability Insurance Benefits ("DIB").  See Complaint ("Compl.") (Doc. No. 1).  She moves to reverse the Decision of the Commissioner or, in the alternative, to remand for an additional hearing.  See Plaintiff's Motion for Order ("Pl.'s Mot.") (Doc. No. 14); Plaintiff's Memorandum in Support of Motion for Order Reversing the Decision of the Commissioner ("Pl.'s Mem.") (Doc. No. 14-1).  The Commissioner cross-moves for an Order affirming his Decision.  See Defendant's Motion for Order ("Def.'s Mot.") (Doc. No. 16); Defendant's Memorandum in Support of Motion for an Order Affirming the Commissioner's Decision ("Def.'s Mem.") (Doc. No. 16-1).

For the reasons discussed below, Tami's Motion to Reverse is granted in part, and the Motion to Affirm the Decision of the Commissioner is denied. The case is remanded for further proceedings consistent with this Ruling.

## II.    BACKGROUND

Plaintiff Tami B. filed this action on November 1, 2021. <u>See</u> Compl. She had originally filed her DIB application on July 19, 2019, alleging disability beginning on August 31, 2017. <u>See</u> Administrative Record ("AR") at 15 (Doc. No. 8); Pl.'s Mem. at 1. Her claim was initially denied on November 25, 2019, as was her request for reconsideration on March 18, 2020. AR at 15. She then requested a hearing before an Administrative Law Judge ("ALJ"), which was held via telephone on December 18, 2020. <u>Id.</u>; Pl.'s Mem. at 2. Following that hearing, the ALJ issued his Decision denying her claim on March 10, 2021. AR at 12–30 (hereinafter "ALJ Decision"). The ALJ found that the last date Tami was insured was December 31, 2019. ALJ Decision, AR at 16. He determined that she was not disabled within the meaning of sections 216(i) and 223(d) of the Social Security Act between August 31, 2017 – the alleged onset date of her disability – and December 31, 2019 – her Date Last Insured ("DLI").[1] <u>Id.</u> After the Appeals Council denied her request for review, she brought the instant action in this court. <u>See</u> <u>id.</u> at 1–9; Pl.'s Mem. at 2.

The court otherwise assumes familiarity with the Administrative Record ("AR") in this case and adopts the undisputed but supported facts as stated by the parties in their Joint Statement of Material Facts. <u>See</u> Pl.'s Material Facts (Doc. No. 14-2); Def.'s

---

[1] Neither party challenges that this is the relevant time period for Tami B's Application.

Material Facts (Doc. No. 16-2).  When relevant, however, the court notes any disagreements between the parties as to these facts below.

## III.    STANDARD OF REVIEW

The ALJ follows a five-step evaluation to determine whether a claimant is disabled within the meaning of the Social Security Act.  At the first step, the ALJ considers whether the claimant is currently engaged in substantial gainful activity.  If not, the ALJ proceeds to the second step and considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.  If the claimant has a "severe impairment", the ALJ proceeds to step three and asks whether, based solely on the medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations.  See 20 C.F.R. § 404.1520(a)(4).  If the claimant has one of these enumerated impairments, the ALJ will automatically consider that claimant disabled, without considering vocational factors such as age, education, and work experience.  Id.

If the impairment is not "listed" in the Regulations, the ALJ proceeds to step four and asks whether, despite the claimant's severe impairment, he or she has the Residual Functional Capacity ("RFC") to perform past work.  At step five, the ALJ determines whether there is other work the claimant could perform.  Id.  To be considered disabled, an individual's impairment must be "of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  The ALJ bears the burden of proof on the fifth step, while the claimant has the burden on the first four steps.  See McIntyre v. Colvin 758 F.3d 146, 150 (2d Cir. 2014).

3

Under section 405(g) of title 42 of the United States Code, the district court may not review de novo an ALJ's decision as to whether the claimant was disabled. See Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998). The court's review of the ALJ's Decision "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (citation omitted). See also 42 U.S.C. § 405(g). "Substantial evidence" requires "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). If the ALJ's findings of fact are supported by substantial evidence, those findings are conclusive, and the court will not substitute its judgment in this regard for that of the ALJ. 42 U.S.C. § 405(g); see also Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998).

## IV.    ANALYSIS

Tami argues that this court should reverse the ALJ's Decision to deny her DIB application because that Decision was not supported by substantial evidence—specifically, Tami argues that the ALJ lacked substantial evidence to support his determination of Tami's Residual Functional Capacity ("RFC") in light of her severe impairments. Pl.'s Mem. at 2.

In his Decision, the ALJ found that, through the date last insured, Tami "had the following severe impairments: left shoulder adhesive capsulitis ['frozen shoulder'], tension headaches, obesity, a depressive disorder and an anxiety disorder. . . ." ALJ Decision, AR at 18. Further, he found that Tami suffered from non-severe impairments such as "hypertension, hyperlipidemia, irritable bowel syndrome, gastroesophageal

reflux disease, hidradenitis supparativa (chronic skin condition), temporomandibular joint dysfunction, asthma, vitreous degenerative and left eye cataract." Id.

Once he identified "all of [Tami]'s medically determinable impairments, including those that are not severe", the ALJ proceeded to assess Tami's RFC during the applicable period for DIB. Id. RFC is "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis.[2] A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id. RFC is "an assessment based upon all of the relevant evidence . . . [which evaluates a claimant's] ability to meet certain demands of jobs, such as physical demands, mental demands, sensory requirements, and other functions." 20 C.F.R. § 220.120(a).[3]

"When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account . . . ." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010). However, the ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." Id. Indeed, the Social

---

[2] The determination of whether such work exists in the national economy is made without regard to: (1) "whether such work exists in the immediate area in which [the claimant] lives;" (2) "whether a specific job vacancy exists for [the claimant];" or (3) "whether [the claimant] would be hired if he applied for work." Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (internal quotation marks omitted).

[3] An ALJ must consider both a claimant's severe impairments and non-severe impairments in determining his/her RFC. 20 C.F.R. § 404.1545(a)(2); De Leon v. Sec'y of Health & Human Servs., 734 F.2d 930, 937 (2d Cir. 1984).

Security Administration's Ruling regarding how a claimant's symptoms should be evaluated explains:

> If the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, [the ALJ] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record.

Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Oct. 25, 2017) (hereinafter "SSR 16-3P").

In the instant case, the ALJ determined that, "through the date last insured, [Tami] had the residual functional capacity [('RFC')] to perform medium work . . . except [that Tami] can stand and walk for 6 hours and sit for 6 hours during an 8-hour workday."  ALJ Decision, AR at 21.  The ALJ further noted that Tami could "occasionally reach overhead with the left upper extremity [('LUE')].  [Tami] can frequently climb ramps and stairs and occasionally climb ladders, ropes or scaffolds."  Id.  Finally, he found that Tami "can frequently stop, kneel, crouch and crawl . . . [but] must avoid extreme temperatures and concentrated exposure to dust, fumes, gases, odors and poor ventilation.  [Tami] is able to perform simple, routine tasks."  Id.

Tami claims that the ALJ lacked substantial evidence to support this determination in light of her severe impairments, such as her frozen shoulder and obesity.  Pl.'s Mem. at 2.  She also claims that the ALJ erred in evaluating the impact of Tami's obesity on her RFC, "in that [the ALJ] relied upon a rescinded SS ruling" when explaining his determination.  Id.

The court addresses each of these arguments in turn and, because the ALJ failed to clearly delineate how he reached his RFC determination, grants Tami B.'s Motion in part and denies the Commissioner's Motion.

A.    <u>ALJ's RFC Determination re: Tami's LUE</u>

Tami argues that the ALJ's RFC determination, that she could work with "occasional reaching overhead with the LUE, with no other reaching restrictions, is lacking substantial evidence[.]"  Pl.'s Mem. at 14.  Tami supports this argument by noting that (1) no medical provider on the record singled out overhead reaching as something she could do and (2) the medical "report cited [by the ALJ] and upon which the ALJ . . . relies . . . finds that there is pain at the <u>endpoints of all of the range of motions.</u>"  Pl.'s Mem. at 14 (emphasis in original).

Indeed, the ALJ observed that the range of motion of her shoulder was "much improved."  ALJ Decision, AR 26.  However, the phrase "much improved" does not appear in the cited medical record.  Exhibit 2F, AR 379–82.  Further, the record contains the report/notes of Dr. Kogan.  <u>See</u> Exhibit 9F, AR 637–41.  While Dr. Kogan writes that there is "full range of motion . . . in all joints of the upper extremities bilaterally," he qualifies that observation "except the left shoulder has tenderness . . ." <u>Id</u>. at 3, AR 639.  Further, he notes that Tami B. has "pain towards the extremes of these full range of motion and give-way type weakness throughout these ranges of motion."  <u>Id.</u>  Finally, Dr. Kogan notes that Tami B. reports she is unable to externally rotate her left shoulder.  <u>Id.</u>  The ALJ does not find Dr. Kogan's opinion inconsistent with the evidence but is not persuaded by it because it does not "provide insight into claimant's abilities."  ALJ Decision, AR 25.

The Commissioner, in contrast, argues that Tami's claim "amounts to nothing more than an invitation to this court to reweigh the evidence in her favor" because "the ALJ already considered and discussed" the same.  Def.'s Mem. at 5.

It is well established within this Circuit that "a conservative treatment regimen, when combined with other similarly conflicting evidence in the record, is substantial evidence sufficient to discount a claimant's statements about the severity of their symptoms."  Thomas v. Comm'r of Soc. Sec. Admin., No. 19 CIV. 1177 (GWG), 2020 WL 4757059 at *14 (S.D.N.Y. Aug. 18, 2020) (collecting cases); see also SSR 16-3P (permitting the Commissioner to discount a claimant's alleged symptoms if the "extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints").

In the instant case, the ALJ noted that, "[r]egarding [Tami]'s left shoulder complaints", Tami's "treatment records document only conservative or routine treatment."  ALJ Decision, AR at 23.  The ALJ went on to point out that, after Tami "completed an initial course of physical therapy" following the car accident that caused her initial shoulder injury, Tami "appears to have achieved successful control of her symptoms because she did not engage in regular treatment or monitoring of her shoulder during 2018."  Id. at 23.  When, in January 2019, Tami "reported that her shoulder pain was increasingly bothersome", the ALJ noted that, while "[p]hysical examination findings at the time showed pain and stiffness at the end ranges of motion", Tami then underwent "an additional course of physical therapy" and experienced such "significant improvement of her left shoulder symptoms" that she "declined to receive the [recommended therapeutic] injection[.]"  Id. at 22.  The ALJ concluded that Tami's

"treatment history and clinical findings suggest that she was able to achieve satisfactory control of her left shoulder complaints with conservative treatment, which is not consistent with the level of limitation" Tami alleges here. Id. at 24. As the Commissioner points out in his Memorandum, the treatment note Tami references in support of her argument also states that, while Tami "continue[d] to have pain and stiffness at the endpoints of all range of motion, . . . motion is significantly improved" and that she presented with "5/5 strength with external rotation". Def.'s Mem. at 6. Thus, the Commissioner argues, the ALJ's "RFC restriction to only occasional overhead reaching with the [LUE] more than accounts for her reduced external rotation." Id.

While Tami complains of pain in her shoulder, the ALJ did examine the Record, and although he occasionally overstates it, there is some basis to support his finding that the pain, and the limitation with regard to her range of motion, was not so severe as to warrant a stricter limitation. Under the "substantial evidence" standard, which governs this court's review here, the ALJ's findings are not to be disturbed unless "a reasonable factfinder would have to conclude otherwise." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (quoting Warren v. Shalala, 29 F.3d 1287, 1290 (8th Cir. 1994)) (emphasis in original). None of Tami's medical providers or evaluations made the specific finding that Tami's shoulder required only a limitation on overhead reaching. This is immaterial, however, as the ALJ could conceivably have found no limitations at all on Tami's shoulder movement, particularly given the lack of complaints about shoulder issues in 2018, and the apparent improvement in Tami's range of motion nearing the end of the insured period. Likewise, Tami's claims of "pain

at the endpoints of all range of motion" was appropriately considered by the ALJ when he decided to restrict her to only occasionally reaching overhead.

It is a very close call as to whether there is "substantial evidence" to support the ALJ's narrow determination that Tami could only reach overhead occasionally with her left arm.  Without deciding that question, the court will rest its decision on its rationale set out in Section B(3).  See, infra, Section B(3).

B.    RFC Determination re: Tami's Obesity

The ALJ determined that Tami's left shoulder limited her ability to lift overhead, but otherwise concluded that she was able to perform medium work, including frequently climbing stairs, kneeling, crawling, stooping, and walking up and down ramps.  ALJ Decision, AR at 21.  Tami argues that this is not supported by substantial evidence, particularly with respect to her severe impairment of obesity.  The court addresses each of her arguments in turn.

1.    Reliance on a Rescinded Rule

Tami first argues that the ALJ's apparent reliance on SSR 02-1P, which "was repealed and replaced effective May 20, 2019", by SSR 19-2P, in his consideration of her obesity impairment was reversible error, "as it is incumbent upon the ALJ to follow regulations and rulings that are currently in effect, and not those which have expired." Pl.'s Mem. at 15.  The Commissioner counters that, in order to "warrant remand, [Tami] must demonstrate that the ALJ committed an error that prejudiced her claim of disability."  Def.'s Mem. at 8.

"Remand is unnecessary . . . where application of the correct legal standard could lead to only one conclusion."  Zabala, 595 F.3d 402, 409 (2d Cir. 2010) (internal citations omitted).  Thus, while citing to a rescinded Social Security Ruling may

constitute error, the court's analysis does not end there: instead, it must also determine whether the outcome would have been different had the ALJ considered the updated Social Security Ruling.  As the Commissioner points out, "under either ruling, the ALJ is tasked with explaining how he reached his conclusion on whether obesity causes ay limitations" and is warned that "the combined effects of a claimant's obesity with other impairments may be greater than might be expected without obesity."  Def.'s Mem. at 8. In her Memoranda, Tami fails to point out how the updated Ruling is materially different from the prior iteration.  This court's review of the two Rulings revealed no substantial differences between the two such that considering the updated Ruling would have led the ALJ to conclude differently in Tami's case.  Indeed, the guidance from the updated Ruling, SSR 19-P, that Tami cites in her Memorandum, Pl's Mem. at 19, is nearly identical to that of the rescinded Ruling relied upon by the ALJ.[4]

In the absence of any evidence or argument to the contrary, the court cannot remand the ALJ's Decision on the ground that the ALJ relied upon the outdated Ruling, SSR 02-1P.

2.      Sufficiency of ALJ's Explanation of Obesity as a Factor

Tami next argues that the ALJ's RFC determination that Tami is able to "frequently stoop, kneel, crouch, and crawl" was also unsupported by substantial evidence.  Pl.'s Mem. at 16.  However, Tami claims that this court should reverse the

---

[4] The outdated Ruling, SSR 02-1P, stated "An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling."  SSR 02-1P. The Ruling in force when the ALJ made his Decision states: "A person may have limitations in any of the exertional functions, which are sitting, standing, walking, lifting, carrying, pushing, and pulling."  SSR 19-2P.

ALJ's Decision here on the basis that the ALJ's Decision does not adequately explain how the ALJ factored Tami's obesity into his findings.  Id. at 17.  Tami explains that with her height at approximately five feet tall, and her weight at approximately 246 pounds, she has what is categorized as "severe obesity."  Id. at 16.  She then points to the Social Security Administration's 19-2P Ruling, which provides "instructions on how to evaluate obesity", suggesting that an obese "person may have limitations in non-exertional functions such as stooping, kneeling, crouching, and crawling."  Id. (quoting Soc. Sec. Ruling, SSR 19-2p; Titles II & XVI: Evaluating Cases Involving Obesity, SSR 19-2P (S.S.A. May 20, 2019) (hereinafter "SSR 19-2P")).  Tami argues that, although the ALJ stated in his Decision that Tami's "functional capabilities are likely to be limited by her obesity and that the combined effect of obesity with other impairments may be greater than might be expected without obesity", the ALJ did not provide an adequate explanation of how he considered these factors.  Id. at 17.

The Commissioner counters that "it is unclear just what kind of articulation [Tami] suggests should have been included in the ALJ's written decision" factoring her obesity into his RFC.  Def.'s Mem. at 8.  According to the Commissioner, the "ALJ's discussion of [Tami]'s obesity . . . made it clear that he considered [her] obesity when determining the RFC, and found that the combination of her obesity with other impairments resulted in the RFC limitations."  Id. at 8–9.  More importantly, the Commissioner points out that, while Tami had the "burden to prove a disabling RFC", she has "pointed to no evidence suggesting that her obesity caused additional limitations beyond those found in the RFC."  Id. at 9.  Finally, the Commissioner emphasizes that "the statutory standard of

review in Social Security cases 'defers to the presiding ALJ, who has seen the hearing up close.'" Id. (quoting Biestek v. Berryhill, 139 S. Ct. 1148, 1157 (2019)).[5]

While a court can remand an ALJ's decision if the ALJ "made a finding that [a] limitation affected [a p]laintiff's residual functional capacity in some way, but . . . does not appear to address the functional limitations resulting from this impairment", see, e.g., Bendler-Reza v. Colvin, No. 3:15-CV-1576 (JAM), 2016 WL 5329566, at *7 (D. Conn. Sept. 22, 2016), it need not necessarily do so when dealing with obesity. In fact, the Second Circuit Court dealt with a similar issue in a 2019 case. In White v. Berryhill, the claimant argued that, in making an RFC determination, "the ALJ was required to explain how he factored [the claimant's] obesity into his analysis of [claimant]'s physical limitations." 753 F. App'x 80, 81 (2d Cir. 2019) (summary order). The Second Circuit, however, found that the ALJ "implicitly factored [the claimant]'s obesity into his RFC determination by relying on medical reports that noted [the claimant]'s obesity." Id. (referencing Drake v. Astrue, 443 F. App'x 653, 657 (2d Cir. 2011) (summary order)) (internal alterations omitted). A court in the Western District of New York dealt with a similar argument from its plaintiff, but upon finding "the record devoid of any indication from a medical source that [the] plaintiff's obesity has negatively impacted her ability to perform work-related activities", also held that the ALJ had properly factored obesity into his RFC determination. Battle v. Colvin, No. 13-CV-547-JTC, 2014 WL 5089502, at *6 (W.D.N.Y. Oct. 9, 2014); see also Acevedo v. Saul, No. 20 CIV. 8027 (GWG), 2021 WL 6110933, at *6 (S.D.N.Y. Dec. 27, 2021) ("The ALJ's finding that Acevedo's obesity was

---

[5] The court notes that the ALJ in Tami's case did not have the advantage of "see[ing] the hearing up close." Biestek, 139 S. CT. at 1157. Due to the Covid-19 pandemic, Tami's hearing was conducted telephonically. See ALJ Decision, AR at 15.

not severe was also supported by the record, which was devoid of even a suggestion that Acevedo's obesity caused any functional limitations"); Gallagher v. Astrue, No. 06-CV-0547 (VEB), 2009 WL 1405321, at *7 (N.D.N.Y. May 18, 2009) ("[I]t can be logically inferred that while the ALJ did not explicitly consider Plaintiff's obesity as part of his decision, it was factored indirectly into his decision as part of the doctor's opinions and other evidence contained in the record.").

The ALJ's explanation of his consideration of Tami's obesity in assessing her RFC was likely adequate under the standards set by courts, like those deciding White and Battle, in this Circuit.  However, without deciding that question, the court will rest its decision on its rationale set out in Section B(3).  See, infra, Section B(3).

3.     Overall RFC Determination

Tami's final argument is that the ALJ's determination that Tami could do medium work with the limitations he outlined and the postural activities he described was unsupported by substantial evidence, particularly in light of her obesity.

It is clear, from cases like Battle and White and from the discussion above, that ALJs do not need to detail how they have factored a finding of obesity into their RFC determination.  This does not, however, compel the conclusion that the ALJ need not adequately explain how the evidence in the record led to the RFC determination that the ALJ made.  Indeed, there is a critical difference between the ALJ's ultimate RFC determination in this case and those of the ALJs in White and Battle.  Here, the ALJ found Tami had the RFC to "perform medium work".  ALJ Decision, AR at 21.  The ALJs in both White and Battle determined that the plaintiff's RFCs permitted only light work. See White, 753 F. App'x at 81; Battle, 2014 WL 5089502, at *1; see also Acevedo, 2021 WL 6110933, at *3 (determining light work was appropriate for obese plaintiff);

Gallagher, 2009 WL 1405321, at *3 (same).  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567.

In contrast, the ALJ in the instant case determined that Tami could perform medium work, which "requires the ability to lift up to 50 pounds occasionally, and 25 pounds frequently. . . .  [A]n individual doing a medium occupation [spends the] majority of the workday lifting and carrying."  Pl.'s Mem. at 19.  The ALJ also found that Tami could, inter alia, "frequently climb ramps and stairs and occasionally climb ladders, ropes or scaffolds . . . [and] frequently stoop, kneel, crouch and crawl[,]" ALJ Decision, AR at 21.  "Frequent", in this context, means "one-third to two-thirds of the time."  Soc. Sec. Ruling, SSR 83-10; Titles II & XVI: Determining Capability to do other work—The Medical-Vocational Rules of Appendix 2, SSR 83-10 (S.S.A. Jan. 1, 1983).  Tami argues that the "divergence between the opinion of the treating physician and the ALJ borders on startling", Pl.'s Mem. at 20, and, while the ALJ did explain his reasoning for discounting Dr. Rajashekar's Medical Source Statement, the court agrees.

In her Memorandum, Tami cites to a Medical Source Statement provided by her medical provider, Dr. Rajashekar, on December 15, 2020.  See Exhibit 27F, AR at 824. In the Statement, Dr. Rajashekar "opine[d that Tami] needs a cane, and it is medically necessary, due to difficulty with ambulation."  Pl.'s Mem. at 19.  Tami proposes that Dr. Rajashekar's Statement "[was] likely largely predicated upon her obesity, as her hip condition, in the absence of the obesity, would likely not require same", though she does not point to where in the record this is evident.  Id.

The ALJ ultimately "[did] not find [Dr. Rajashekar's] opinion persuasive."  ALJ

Decision, AR at 26.  Critically, the Statement was "rendered nearly one year after the

conclusion of the period relevant to [the ALJ's] decision after the date last insured,

rendering it less persuasive on the issue of disability prior to the date last insured."  Id.

More importantly, the ALJ found that, "[o]verall, . . . the [Statement] provided by Dr.

Rajashekar is not supported by corroborating clinical findings within the treatment

records provided."  Id.  The ALJ provided numerous examples of inconsistencies

between the Statement and prior treatment records.  For example, he noted that "Dr.

Rajashekar's treatment notes do not document mobility issues or clinical findings of a

limited ability to ambulate as would be expected given the significant limitations opined

regarding [Tami]'s abilities to stand and walk."  Id.  The ALJ went on to point out Tami's

hearing testimony that Dr. Rajashekar "has not recommended restricted activities,"

which, in the ALJ's judgment, "suggest[ed] that this limitation [on Tami's ability to walk

more than 100 feet unassisted] is based upon [Tami]'s subjective reports."  Id.

As described above, the ALJ did consider the weight of Dr. Rajashekar's

Statement and clearly articulated his reasoning for not finding it persuasive.  See ALJ

Decision, AR at 25–26.  Still, "[t]he ALJ must build an accurate and logical bridge from

the evidence to his conclusion to enable a meaningful review."  Hickman ex rel. M.A.H.

v. Astrue, 728 F. Supp. 2d 168, 173 (N.D.N.Y. 2010) (quotation omitted).  Here, like in

Simon v. Comm'r of Soc. Sec. Admin., 2020 WL 6488427, at *6 (E.D.N.Y. Nov. 4,

2020), "it is not clear how the ALJ reached the conclusion that the plaintiff could perform

'medium work.'"  Id.  Although it is true that the burden was on the plaintiff to

demonstrate that she was not capable of working, "it is incumbent upon the ALJ to

16

provide a detailed rationale for either rejecting the [plaintiff's] limitations or deeming them accommodated by the limitations stated as part of the RFC assessment[.]"  Long v. Berryhill, 2019 WL 1433077, at *4 (E.D.N.Y. Mar. 29, 2019).

The ALJ in the instant case found that Tami, a sixty-two-year-old woman standing no taller than five feet one inch and weighing nearly 250 pounds, suffered from "severe impairments" including left shoulder adhesive capsulitis and obesity.  ALJ Decision, AR at 18, 28 (citing AR 336-339).  He then noted that none of the record medical evidence, generated within the coverage period, explicitly forbade Tami from kneeling, stooping, crawling, or climbing.  He went on to conclude that Tami, an obese sixty-two year old, could spend up to six hours a day, five days a week—for a combined total of up to thirty hours every week—"climb[ing] ramps and stairs" and "stoop[ing], kneel[ing], crouch[ing], and crawl[ing]" and carrying loads exceeding 25 pounds, and "occasionally reach overhead with the left upper extremity."   ALJ Decision, AR at 21.

This court simply cannot comprehend the "logical bridge from the evidence" to the ALJ's conclusion in this case.  As the Simon court made clear, a district court "must remand where the ALJ's decision was not thoroughly explained in a manner that allows the court to be comfortable that it was supported by substantial evidence."  2020 WL 6488427, at *6.  Indeed, remand is especially "appropriate where further findings or explanation will clarify the rationale for the ALJ's decision."  Id. (citing Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996).  Thus, the court determines that remand is necessary to gain further clarification regarding the ALJ's reasoning.  The court, therefore, denies the Commissioner's Motion to Affirm the Decision (Doc. No. 16).

V.      **CONCLUSION**

In light of the ALJ's failure to adequately and clearly lay out a roadmap for its RFC determination, the Commissioner's Motion to Affirm the Decision of the Commissioner (Doc. No. 16) is denied.  Tami's Motion to Reverse the Decision of the Commissioner (Doc. No. 14) is granted insofar as it seeks an order to remand for a rehearing.  The court vacates the ALJ's Decision and remands this case to the Social Security Administration for further proceedings consistent with this Ruling.

**SO ORDERED.**

Dated at New Haven, Connecticut this 7th day of March 2023.


 /s/ Janet C. Hall
Janet C. Hall
United States District Judge